IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINA
RICHMOND DIVISION

IN RE:   RICHARD ALLEN STRICKLAND and    Case No. 09-32718-KRH
         SUZANNE D. STRICKLAND,          Chapter 7
                  Debtors.


## MEMORANDUM OPINION


The Court has before it the objection of the Chapter 7 Trustee, Keith L. Phillips (the "Trustee"), to an exemption claimed by Richard Allen Strickland and Suzanne D. Strickland (the "Debtors") pursuant to Rule 4003 of the Federal Rules of Bankruptcy Procedure (the "Objection"). The Objection challenges the Debtors' attempt to claim as exempt the proceeds (the "Proceeds") remaining from the liquidation of a certificate of deposit and real property that together served as collateral for a loan (the "Loan") that the Debtors had obtained from one of their secured lenders. The Debtors timely filed a homestead deed under Virginia law[1] claiming an exemption in the certificate of deposit, but they failed to file a homestead deed claiming an exemption in the Real Property. The Trustee contends that the secured lender liquidated the certificate of deposit and applied all of the proceeds realized therefrom to reduce the outstanding balance on its Loan before it proceeded to sell the real property. The Trustee asserts that the excess Proceeds thus result from the subsequent sale of the real property and not from the liquidation of the certificate of deposit. As the Debtors never claimed the real property as exempt under Virginia law, the Trustee maintains that the Proceeds belong to the estate. The

---

[1] Virginia has opted out of the federal exemption scheme. *See* Va. Code Ann. § 34-3.1. Debtors who are required to use the exemptions provided by Virginia law are entitled to claim a wild card exemption not to exceed $5000 on the assets of their choosing. *See* Va. Code Ann. § 34-4 (the "Homestead Exemption"). The exemption is claimed by timely recording a homestead deed in the proper jurisdiction within the state. *Mayer v. Nguyen (In re Nguyen)*, 211 F.3d 105, 109 (4th Cir. 2000).

Debtors argue that the Proceeds derive from the liquidation of the collateral generally and should be deemed to be the product of the certificate of deposit, which they did properly claim as exempt. The Court agrees with the Trustee. As the Proceeds result from the sale of the real property (and not the certificate of deposit) and as the Debtors failed to properly claim and perfect an exemption in the real property under Virginia law, the Trustee's Objection must be sustained. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[2]

The Court has subject-matter jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

## Undisputed Facts[3]

The Debtors are individuals who are married to each other. They jointly filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 29, 2009 (the "Petition Date"). Keith L. Phillips was appointed as the Chapter 7 Trustee in their bankruptcy case, and he continues to serve in that capacity. On the Petition Date, the Debtors owned, as tenants by the entirety, a 10-acre parcel of real property located in the County of Powhatan, Virginia, commonly known as 2470 Goodwyn Lake Court, Powhatan, Virginia 23139 (the "Real Property"). The scheduled value of the Real Property was $150,000. As of the Petition Date, the Debtors had a Loan with the Bank of Virginia (the "Bank") that had an outstanding principal

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

[3] The parties have stipulated to the facts herein.

2

balance of $215,267.61. The Loan was secured by a first deed of trust lien on the Debtors' Real Property. The Debtors contend that they did not claim a Homestead Exemption under Virginia Code § 34-4 in the Real Property because the Real Property was, in their view, fully encumbered.

Debtor Richard Strickland owned individually, as of the Petition Date, a certificate of deposit (the "CD") with Bank of America. The scheduled value of the CD was $79,026.93. The CD was pledged as additional collateral for the Debtors' Loan with the Bank. On the Petition Date, the Debtors each claimed a $2.00 Homestead Exemption in the CD under Virginia Code § 34-4.[4]

On May 15, 2009, the Bank filed a motion for relief from automatic stay with respect to the Real Property.[5] The Trustee advised the Bank's counsel that he would not consent to the relief with respect to the Real Property until after the Bank had liquidated the CD and applied the proceeds to the Bank's indebtedness. On July 17, 2009, the Bank filed a Motion for Relief from Stay as to the CD. The Motion for Relief from Stay as to the CD was accompanied by a consent order, signed by Bank's counsel and endorsed by the Trustee and Debtors' counsel, granting relief to the Bank as to the CD. The consent order was entered on July 22, 2009. The Bank immediately liquidated the CD and applied the proceeds against the Loan balance. On July 31, 2009, the Court entered a second consent order, which was also signed by Bank's counsel and endorsed by the Trustee and Debtors' counsel. The second consent order granted the Bank further relief from the automatic stay allowing it to proceed against the Real Property.

---

[4] The amount of the homestead exemption available to a debtor under Va. Code § 34-4 has a lifetime aggregate limit. *See* Va. Code Ann. § 34-21. Debtors' counsel initially recorded a small amount for the exemption so as not to needlessly consume the Debtors' lifetime limit until the necessary amount for the exemption could later be determined.

[5] *See* 11 U.S.C. § 362(d).

The § 341 meeting of creditors was held on July 20, 2009. The Trustee never abandoned his interest in the Real Property. On August 29, 2009, the Trustee received a check from Erie J. Reynolds, Esq., in the amount of $7,553.25. The Settlement Statement that accompanied the check explained that the check represented the excess proceeds remaining after the Bank's foreclosure of the Real Property and the resulting satisfaction of its Loan to the Debtors. On August 12, 2009, the Debtors received their discharge.

On January 6, 2010, the Debtors filed an Amended Homestead Deed in Chesterfield County Circuit Court, their county of residence, increasing the amount of the exemption claimed by Mr. Strickland in the CD to $4,603.00, and increasing the amount of the exemption claimed by Mrs. Strickland in the CD to $4,772.04.[6] On January 8, 2010, the Debtors filed Amended Schedules B and C. On Amended Schedule C, the Debtors claimed an exemption, collectively, of $6,922.04 in the CD. On December 1, 2009, the Trustee received correspondence from the Bank, along with an additional check in the amount of $38.33, stating that the Debtors' loan had been paid in full.

**Analysis**

11 U.S.C. § 541 provides for the creation of a bankruptcy estate upon the commencement of a bankruptcy case. Section 541(a)(1) of the Bankruptcy Code states that, except as provided in subsection (b) and (c)(2), "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the estate. Therefore, the legal and equitable interests that the Debtors had in the CD and the Real Property became property of their bankruptcy estate on the Petition Date. Individual debtors are allowed to reclaim certain of their

---

[6] At the hearing on March 3, 2010, Debtors' counsel noted that Mrs. Strickland's claimed exemption was entered in error, as Mr. Strickland is the sole owner of the CD. As Mrs. Strickland has no ownership interest in the CD, she cannot claim an interest in the asset as exempt. Debtors' counsel advised the Court that the homestead deed and schedule C would be further amended to correct for this mistake.

4

property from property of the estate by claiming it as exempt under 11 U.S.C. § 522. *See, e.g., BancOhio Nat'l Bank v. Walters*, 724 F.2d 1081, 1082 (4th Cir. 1981).

Bankruptcy Code § 522(b)(2) allows states to "opt-out" of the federal exemption scheme provided in 11 U.S.C. § 522(d). Pursuant thereto, Virginia has elected not to authorize debtors to avail themselves of the federal exemptions.[7] As the Debtors had been domiciled in Virginia for the 730 days immediately preceding the Petition Date, Virginia's exemption statutes are applicable in this case.[8] One of the most commonly used exemptions under Virginia law is the Homestead Exemption under Virginia Code § 34-4. The Homestead Exemption allows a debtor to hold exempt "real and personal property, or either, to be selected by the [debtor], including money and debts due to the [debtor] not exceeding $5,000 in value,"[9] as well as an additional $500 for each dependent of the debtor. Va. Code Ann. § 34-4. As long as the maximum amount of the lifetime aggregate limit for the exemption had not previously been taken, the Debtors would have been well within their rights to claim exemptions to the extent of their ownership interests in both the CD and the Real Property under § 34-4 of the Virginia Code.[10]

The Virginia exemption statutes control the manner in which the Virginia exemptions must be claimed and perfected. *Mayer v. Nguyen (In re Nguyen)*, 211 F.3d 105, 109 (4th Cir. 2000) (when Congress allowed the states to specify bankruptcy exemptions, it permitted the states to determine both the substance of those exemptions and the procedure by which they are claimed.). *See also Zimmerman v. Morgan*, 689 F.2d 471, 472 (4th Cir. 1982); *Dominion Bank*

---

[7] "No Individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in subsection (d) of § 522 of the Bankruptcy Reform Act, except as may otherwise be expressly permitted under the title." Va. Code Ann. § 34-3.1.

[8] *See* 11 U.S.C. § 522(b)(3)(A).

[9] For householders 65 years of age or older, the exemption value increases from $5,000 to $10,000.

[10] Va. Code § 34-4 permits a debtor to claim an exemption in property against the debtor's unsecured creditors. The exemption applies only to the extent that the Debtors have equity in the subject property.

*of the Cumberlands, NA v. Nuckolls*, 780 F.2d 408, 417 (4th Cir. 1985) (Hoffman, D.J., concurring specially); *In re Lamm*, 47 B.R. 364, 366 n. 1 (E.D. Va. 1984); *In re Swift,* 96 F. Supp. 44, 46 (W.D. Va. 1950); *In re Robinette,* 34 F. Supp. 518, 521 (W.D. Va. 1932); *In re Edwards*, 105 B.R. 10, 12 (Bankr. W.D. Va. 1989). To claim and perfect a homestead exemption under § 34-4 of the Virginia Code, the Debtor must set apart the property within 5 days of the § 341 meeting of creditors.[11] A debtor "sets apart" property claimed as exempt by delivering a properly executed homestead deed, with fees paid, to the appropriate clerk. *Mayer v. Nguyen (In re Nguyen)*, 211 F.3d at 109. As the section 341 meeting of creditors was held on July 20, 2009, any property to be exempted under Virginia Code § 34-4 had to have been set apart by July 25, 2009.

To claim and perfect an exemption in real property, a debtor must file the homestead deed "in the county or city wherein such real estate or any part thereof is located." Va. Code Ann. § 34-6. Had the Debtors wanted to claim a portion of the Real Property as exempt, they would have needed to file a homestead deed in Powhatan County, Virginia (the jurisdiction within which the property is located), on or before July 25, 2009. The Debtors failed to do so. No homestead deed was ever filed in Powhatan County; accordingly, no portion of the Real Property was ever set apart as exempt. The Debtors are not now entitled to claim either the Real Property or the proceeds realized therefrom as exempt. *See Zimmerman v. Morgan*, 689 F.2d 471, 472 (4th Cir. 1982) ("The failure of a debtor to comply with the Virginia homestead exemption laws precludes an exemption in bankruptcy.").

---

[11] Virginia Code § 34-17 makes clear that "[t]o claim an exemption in bankruptcy, a [debtor] who (i) files a voluntary petition in bankruptcy . . . shall set such real or personal property apart on or before the fifth day after the date of the meeting held pursuant to 11 U.S.C. § 341, but not thereafter." Va. Code Ann. § 34-17.

6

To claim and perfect an exemption in personal property, a debtor must file a homestead deed in the county or city wherein the debtor resides. Va. Code Ann. §34-14. To claim and perfect an exemption in the CD, the Debtors were required to file a homestead deed in Chesterfield County, Virginia, on or before July 25, 2009, claiming the portion of the CD they wanted to exempt. The Debtors did just that. They claimed and perfected an exemption in the CD in the amount of $2.00 by timely filing a homestead deed in Chesterfield County and by claiming the CD as exempt on their original Schedule C.

Rule 1009(a) of the Federal Rules of Bankruptcy Procedure grants a general right to a debtor to amend the debtor's voluntary petition, list, schedule, or statement "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a); *see also In re Wilmoth,* 412 B.R. 791, 796 (Bankr. E.D. Va. 2009) ("Rule 1009 of the Federal Rules of Bankruptcy Procedure provides a debtor the general right to amend a schedule as a matter of course 'at any time *before* the case is closed.' This right is liberally construed, and courts generally will not deny a motion to amend a claim of exemption in the absence of fraud."). Although a debtor may amend his or her Schedule C at any point during the pendency of the bankruptcy case, a debtor must have set apart the property to be exempted within the time frame specified in § 34-17 of the Virginia Code in order to claim a valid exemption in such property.

In Virginia, the "general rule is that after the time for filing a homestead deed has expired, the debtor is precluded from amending the homestead deed for purposes other than increasing or decreasing the value of property previously included in the homestead deed and new property cannot be exempted." *In re Custis*, 87 B.R. 415, 416 (Bankr. E.D. Va. 1988). The sole exception to this rule is for property that the debtor did not own or have an interest in at the

7

time the exemption was required to be asserted. *See In re Smith*, 45 B.R. 100, 109-11 (Bankr. E.D. Va. 1984).

In this case, the Debtors did have an interest in the Real Property on July 25, 2009, the last day on which they were entitled to file a homestead deed to claim an exemption in the Real Property under § 34-4. While the Debtors are free to amend their schedules and their homestead deed previously filed in Chesterfield County to increase or decrease the amount they wish to claim as exempt in the CD, they are now precluded from claiming any exemption in the Real Property. *Zimmerman v. Morgan*, 689 F.2d 471, 472 (4th Cir. 1982); *In re Conner,* 408 B.R. 88, 89 (Bankr. W.D. Va. 2009). Faced with this reality, the Debtors filed their amended homestead deed on January 6, 2010, and amended their schedules B and C on January 8, 2010, in order to increase the amount claimed as exempt in the CD from $2.00 to $6,922.04. They did not seek to claim an exemption in the Real Property under § 34-4.

Instead, Debtors argue that the Proceeds that the Trustee is holding should be deemed to be the proceeds from the liquidation of the CD, rather than proceeds from the sale of the Real Property. If the Court were to deem the Proceeds as derived from the liquidation of the CD, then the exemption claimed in the CD would apply to the Proceeds and the Debtors would receive some portion of the Proceeds back from the Trustee.

Debtors contend that they obtained the Loan from the Bank in order to acquire the Real Property. In their view, Debtors granted the deed of trust to the Bank as the primary collateral to secure their obligation to repay the Bank. The CD was pledged as secondary collateral. Debtors state that they were under the impression that the Bank would not liquidate the CD until after it had conducted its foreclosure sale against the Real Property and then only if the amount realized by the Bank from the sale of the Real Property was not sufficient to satisfy the Loan balance.

8

However, there is no evidence before the Court that would suggest that the Bank was contractually bound to sell the Real Property before liquidating the CD.

To the contrary, well before relief from the automatic stay was granted to the Bank as to the Real Property, Debtors authorized their counsel to endorse a consent order granting the Bank relief from the automatic stay so that the Bank could exercise its rights against the CD. The consent order that the parties tendered to the Court contained the language "it appearing to the Court the debtors are surrendering the CD." The tendered consent order purporting to grant relief to the Bank as to the CD was entered on July 22, 2009, at which time the Bank liquidated the CD.[12] A second consent order granting relief from the automatic stay as to the Real Property was not entered by this Court until July 31, 2009. Had the Debtors wanted to guaranty that the Real Property would be sold before the CD was liquidated, they should not have consented to relief from the automatic stay as to the CD before the Real Property was sold. Or, in the alternative, the Debtors could have conditioned any such relief from the stay as to the CD on the sale of the Real Property occurring before any liquidation of the CD. Or, the Debtors could have claimed the Real Property as exempt within the time prescribed by the Virginia Code, just as they did with the CD. The Debtors did none of these things. To the contrary, it was the Trustee who insisted that the CD be liquidated before the Real Property was foreclosed. The Debtors appear from the record of this case to have acceded to the Trustee's asserted position in this regard.

The CD was liquidated on July 22, 2009, and the proceeds were immediately applied to the Loan, thereby reducing the outstanding balance. The Real Estate was liquidated months later. There is no question that the Proceeds that were turned over to the Trustee represented the

---

[12] The Court notes that the entry of the consent order and the liquidation of the CD occurred 3 days prior to the date upon which the Debtors would have been required to file a homestead deed in Powhatan County in order to timely claim some portion of the Real Property as exempt.

9

excess proceeds realized from the sale of the Real Property.  Debtors have offered no reason for the Court to deem the Proceeds as derived from any other source.  As such, the Court finds that the Proceeds in dispute arise from the sale of the Real Property, rather than from the sale of the CD.  As the Debtors never claimed or perfected an exemption in the Real Property and as they are precluded from doing so now, the Proceeds in their entirety remain property of the estate. For these reasons, the Trustee's Objection will be sustained.

      A separate order shall be issued.


Entered: _____


                                                              /s/ Kevin R. Huennekens
                                         UNITED STATES BANKRUPTCY JUDGE